# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

KEITH BROWN,

      Petitioner,

v.                                   Case No. 3:20-cv-1188-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for two counts of sexual battery on a child between the ages of 12 and 18 by a person in familial or custodial authority; two counts of lewd or lascivious molestation; one count of lewd or lascivious exhibition; and one count of sale, distribution, or showing obscene material to minors. See id. at 1. Petitioner is serving a 100-year term of incarceration. Respondents filed a Response (Doc.

14; Response) with exhibits (Docs. 14-1 to 14-3; Ex.). Petitioner filed a Notice indicating that he would not file a reply (Doc. 22). This case is ripe for review.[1]

## II.   **Governing Legal Principles**

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's

3

> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Harrington v. Richter, 562 U.S. 86, 101
> (2011) (internal quotation marks omitted). "It bears
> repeating that even a strong case for relief does not
> mean the state court's contrary conclusion was
> unreasonable." Id. [at 102] (citing Lockyer v. Andrade,
> 538 U.S. 63, 75 (2003)). The Supreme Court has
> repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than
> mere error or even clear error. See, e.g., Mitchell v.
> Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at
> 75 ("The gloss of clear error fails to give proper
> deference to state courts by conflating error (even clear
> error) with unreasonableness."); Williams v. Taylor,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court

remedies available for challenging his state conviction. See 28 U.S.C. §

2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]"

every issue raised in his federal petition to the state's highest court, either on

direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351

(1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional

4

issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to

> preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir.

2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans</u>

v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   Analysis

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to investigate and present witnesses. Doc. 1 at 3. He contends the witnesses "would have been able to impeach the victim on crucial points" such as the time of one of the crimes. Id. at 3-4. He asserts that the state court erred by finding he "could not show prejudice based on showing that one of the time frames of the alleged abuse can be contradicted." Id. at 4. He further argues that counsel's "investigation should have included both witnesses who would have testified that the Petitioner was working during the 30 day time period of the Williams[5] rule evidence, school records to show that Petitioner was not authorized to pick her up from school, and also the DCF records to show that her brother committed the crimes." Id. Petitioner's "theory is that if [he] could not have committed one of the alleged crimes, then he did not commit the other crimes." Id.

---

[5] Under the Williams  rule, evidence of collateral crimes is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity." Williams v. State, 110 So. 2d 654, 662 (Fla. 1959).

Petitioner raised similar issues in grounds four, eight, and nine of his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The state court held an evidentiary hearing on some of Petitioner's grounds before denying his motion. As to the claims raised in Ground One of the Petition, the postconviction court reasoned as follows:

<u>Ground Four</u>

Defendant claims Defense Counsel was ineffective for failing to adequately investigate and prepare a defense before trial in order to effectively cross-examine the State's witnesses. Specifically, Defendant alleges he was not authorized to pick the victim up from school and the school office had records to show that. He contends Defense Counsel should have investigated this issue to contradict the victim's statement that Defendant had picked her up from school thirty days in a row when the crime occurred. Defendant avers this was exculpatory evidence.

First, the Court finds Defendant's claim [that] this was exculpatory evidence is meritless. Exculpatory evidence is "[e]vidence tending to establish a criminal defendant's innocence." <u>Exculpatory Evidence</u>, Black's Law Dictionary (10th ed. 2014). Even if such contradiction existed in the victim's story, it would not have tended to establish Defendant's innocence.

Further, at trial, the victim did not testify that Defendant picked her up from school thirty days in a row; rather, she testified Defendant would pick her up from the bus stop when she was in middle school. Regardless, how the victim got home from school was not a material aspect of the trial because there was no testimony about the crimes occurring while the victim was on her way home from school. As such, any

misstatement or contradiction regarding how the victim got home from school was not so serious that Defense Counsel's failure to investigate and present same constituted deficient performance or affected the outcome of the trial.

Additionally, Defendant states, "she alleged that the Defendant had picked her up from school 30 days in a row when the crime occurred." The crimes charged in Counts One and Two were alleged to have occurred "on one or more occasion" over a six-year period. Even if the victim's statement regarding what happened during a thirty-day period was incorrect, given the span of time that the crimes occurred, there is not a reasonable probability the outcome of the trial would have been different if such misstatement was highlighted on cross-examination in an attempt to raise doubt about the credibility of the victim.

Accordingly, Ground Four is denied.

. . . .

## Ground Eight

Defendant claims Defense Counsel was ineffective for failing to require witness testimony during the <u>Williams</u> rule hearing, and misleading Defendant regarding same. Defendant asserts that live testimony would have revealed [redacted] made the same accusations against Defendant before, and an investigation by DCF found the accusations had no merit. He also opines that live testimony would have revealed that [redacted] told DCF caseworkers that [redacted] Gary, was the one who abused [redacted] and that [redacted] said that Gary told her to lie and tell [redacted] it was Defendant who had molested her. Defendant states he suffered prejudice by Defense Counsel never arguing that there was a DCF report that stated Gary was the one who sexually abused [redacted]. Defendant contends had Defense

12

Counsel given this information to the Court or presented it at trial, the Court would not have allowed the State to introduce <u>Williams</u> rule testimony concerning Defendant's actions against [redacted].

. . . .

With regard to Defendant Counsel's failure to address the DCF report, the Court finds as follows . . . .

Though the DCF report mentions Gary, [Defense Counsel] testified at the evidentiary hearing that she and Defendant had concerns about the report being more harmful than helpful for Defendant. As found above in Ground Five, the Court finds [Defense Counsel's] testimony that Defendant had seen the DCF report prior to the <u>Williams</u> rule hearing, and that she and Defendant had discussed the report and strategy, more credible th[a]n Defendant's testimony that he had never seen the report and was not aware of the report until he got to prison. As further addressed in Ground Five, [Defense Counsel] testified that [redacted] never told [redacted] that Gary abused her, but rather, [redacted] said it was Defendant who had abused her. [Defense Counsel] was concerned that the only evidence pointing to Gary as the perpetrator came from Defendant. Based thereon, [Defense Counsel] testified that their strategy was to not bring up the DCF report at the <u>Williams</u> rule hearing because the information from [redacted] deposition was that Defendant provided the information regarding Gary, created the appearance that Defendant was trying to push blame onto someone else. [Defense Counsel] also employed this strategy because, during her research, she never discovered that Gary was convicted of a crime against [redacted], and there was concern about locating Gary because they believed he may, in fact, be a State witness.

Based on the report itself, as well as the deposition testimony of [redacted], the Court finds [Defense Counsel's] strategy in not presenting the DCF report to the Court at the <u>Williams</u> rule hearing or to the jury at trial, was reasonable.

<u>Ground Nine</u>

. . . .

Second, in his Original Motion Defendant alleged that Defense Counsel was ineffective for failing to produce any inconsistencies in the testimony of the State's witnesses. Defendant was granted leave to amend this ground to allege what inconsistences Defense Counsel should have brought out during cross-examination. In his Amended Motion, Defendant states that the inconsistency Defense Counsel failed to highlight is the fact it was impossible for Defendant to have picked the victim up from school for thirty days straight, as she alleged in her initial police statement, in deposition, and at trial, because Defendant worked mandatory swing shifts that changed weekly during the period of the alleged crimes, i.e. 1995-1996. Defendant asserts he provided Defense Counsel with the names of two employees who would have verified his work schedule, and he avers Defense Counsel should have questioned [redacted] and Detective Perez regarding Defendant's employment schedule. Though Defendant refers to "the victim" throughout this claim, it is apparent this claim pertains to the testimony and statements of [redacted] who is not a victim in the instant case, but rather, the individual testifying regarding the <u>Williams</u> rule evidence admitted at trial.

At trial, Defense Counsel moved for a continuance in order to obtain Defendant's employment records. Defense Counsel explained that she provided the depositions to Defendant "a week or

so ago" and asked Defendant to provide her with a letter regarding any issues, but the witnesses who could testify regarding Defendant's employment history were not brought to counsel's attention until trial. Defendant alleges he provided Defense Counsel with the necessary information to contact former employees and investigate an alibi, but the record reflects the information was provided too late for Defense Counsel to take appropriate action. Further, the Court denied Defense Counsel's motion for a continuance to obtain such information. As such, the record refutes Defendant's claim that Defense Counsel was deficient for failing to investigate and call witnesses regarding Defendant's employment schedule.

Further, the Court inquired and Defendant indicated he did not wish to present any witnesses or evidence at trial. Hence, Defendant is not permitted to use the postconviction process to go behind this sworn representation made to the trial court. See Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) ("[A] rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations.").

Assuming arguendo, Defendant's claim was not subject to denial based on the reasons stated above, the Court further finds the following. Defendant's assertion that this evidence was exculpatory is meritless. As stated previously, exculpatory evidence is "[e]vidence tending to establish a criminal defendant's innocence." Exculpatory Evidence, Black's Law Dictionary (10th ed. 2014). Evidence that the Defendant was working at times [redacted] claimed he abused her would not have tended to establish Defendant's innocence as to the crimes committed against [redacted] which were charged in the instant case.

15

Additionally, given the overwhelming evidence establishing Defendant's guilt as to the crimes charged in the instant case, there is not a reasonable probability the outcome of the proceeding would have been different if Defense Counsel had investigated Defendant's employment schedule or questioned witnesses regarding same. Based on the foregoing reasons, Defendant's claim that Defense Counsel was ineffective for failing to present witnesses or to question State witnesses regarding Defendant's employment schedule is denied.

Ex. C1 at 487-88, 502, 506-09 (internal record citations omitted and citations modified). Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed a pro se initial brief, Ex. C2, the state filed a response, Ex. C3, and Petitioner filed a reply, Ex. C4. The First District Court of Appeal per curiam affirmed the denial without issuing a written opinion. Ex. C5.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground One is denied.

## B. Ground Two

Petitioner argues that the trial court violated his constitutional rights "by impermissibly commenting on the evidence." Doc. 1 at 6 (capitalization and emphasis omitted). According to Petitioner, during the state's closing argument, "defense counsel objected to the prosecutor's recitation of facts that were not presented in evidence. In response, the trial court commented on what [s]he believed the facts to be based on h[er] own recollection." Id. Petitioner contends that the trial court's recitation was incorrect and thus prejudiced the jury. Id. Respondents argue that this claim is unexhausted, because "Petitioner waived this trial court error claim by failing to contemporaneously object to the trial court's comments during his trial." Doc. 14 at 9. Respondents alternatively argue that "the claim was 'adjudicated on the merits' by the 1st DCA" and this Court should defer to that ruling. Id. at 30-31.

During the state's closing argument, defense counsel objected, arguing that what the prosecutor said was "not in evidence." Ex. B4 at 573. The trial judge overruled the objection, stating: "Actually I do believe I remember the testimony, so respectfully overruled." Id. Shortly thereafter, defense counsel made another similar objection:

> [Defense Counsel]: Objection, Your Honor, to the statement that there were pictures of a child. Those are facts not the [sic] evidence. There was not testimony that there was photographs of a child on his

17

phone. At this time this was testified to that she was 18 at the time.

. . . .

THE COURT: From the Court's independent recollection from the testimony, I know that there were - - Detective Perez testified that there were photos on the phone. From my independent recollection I do not - - I know she received a phone at 17. I do not know from my independent recollection whether or not there was testimony in the record that photos were from 18 forward.

[The State]: I can withdraw it and rephrase it[.]

THE COURT: Why don't you do that. . . . And that is simply from the Court's independent recollection.

Id. at 584-85.

On direct appeal, Petitioner argued that the trial court's impermissible comments on the evidence amounted to fundamental error. Ex. B5 at 29-31. The state responded, arguing that the alleged error did not amount to fundamental error as "[t]he comments complained of did not prejudice [Petitioner] or deprive him of a fair trial." Ex. B6 at 41. The First DCA per curiam affirmed Petitioner's convictions and sentences without issuing a written opinion. Ex. B7.

Reviewing the parties' briefs on direct appeal reveals that Petitioner raised this claim in terms of state law only. Thus, he failed to alert the state court to the federal nature of the claim before this Court, rendering Ground Two of the Petition unexhausted and procedurally barred. Petitioner has shown

neither cause nor prejudice to excuse the procedural bar, nor has he shown a fundamental miscarriage of justice would result if the Court did not address this claim on the merits. Thus, Ground Two is due to be denied.

Even assuming the federal nature of this claim is exhausted, the claim has no merit. While a defendant has a "constitutional right to a fair trial by an unbiased jury and an impartial judge," the record here reflects that the trial judge did not have any personal interest in the outcome of the trial or attempt to sway the jury with these comments. Wellons v. Warden, Georgia Diagnostic & Classification Prison, 695 F.3d 1202, 1211 (11th Cir. 2012). Moreover, the jury was specifically instructed to "disregard anything [the judge] may have said or done that made [them] think [the judge] preferred one verdict over another." Ex. B4 at 625. Even if the comments were improper, there was sufficient evidence of Petitioner's guilt to support the convictions.[6] The judge's comments did not render Petitioner's trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Ground Two is due to be denied.

---

[6] At sentencing, the trial judge stated: "I sat here and I listened to what the Court would construe as a sophisticated pattern of abuse." Ex. B1 at 123.

## C. Ground Three

Petitioner asserts that his trial counsel was ineffective for failing to object to the prosecutor's improper comments during opening statements and closing arguments. Doc. 1 at 8. Petitioner points to the following specific comments that he contends were objectionable:

- Keith Brown, the defendant, started a sexual relationship with a female in 2003.

- There were no inconsistencies in the victim's testimony.

- And they are all of a child on this Defendant's phone. The victim was a child and this Defendant had nude photographs of her saved in his phone.

- [A]nd as he sits before you today, he is absolutely guilty.

Id. at 9.

Petitioner raised this claim in his Rule 3.850 motion.[7] The postconviction court denied it:

Defendant claims Defense Counsel was ineffective for failing to object to numerous improper comments made by the prosecutor, and for not raising a proper objection once she did object. Defendant points to several comments in arguing this ground. The Court addresses each one below.

---

[7] In his Rule 3.850 motion, Petitioner challenged other statements made by the prosecutor as well. This Court will only address the comments Petitioner challenges in the Petition.

20

First, Defendant points to two comments made during opening statements: (1) "Keith Brown, the defendant, started a sexual relationship with a female in 2003," and (2) "[redacted] was [redacted] old, [redacted] old when that Defendant, living with [redacted], began to molest [redacted]." Defendant argues that these statements were improper because Defendant, the victim, and the victim's mother did not move in together until 2005. In fact, [redacted] testified that she met Defendant in 1998, they started dating a year to a year-and-a-half later, things became serious and Defendant started coming around more about a year after they started dating, and then Defendant eventually moved in. The victim's birthdate is September 1, 1991, and [redacted] testified that when the victim was around [redacted] old, Defendant was responsible for taking care of the victim while [redacted] was at work, and she would get home from work around 12:30 when the victim was already asleep.

The Court finds these statements were not improper, and therefore, Defense Counsel was not deficient for failing to object. See Ruiz v. State, 80 So. 3d 420, 421 (Fla. 4th DCA 2012) (finding "prosecutor's opening statement was not improper because it provided a synopsis of what the witnesses would say" (citing Conahan v. State, 844 So. 2d 629,643 (Fla. 2003))).

Next, Defendant raises issue with two closing statements regarding Defendant's guilt: (2) " . . . and as he sits before you today, he is absolutely guilty," and (2) "[s]o he no longer is sitting there an innocent man. He sits there guilty of every single charge that has been placed against him."

To demonstrate prejudice based on counsel's failure to object to allegedly improper comments, the prosecutor's comments must constitute reversible error. Taylor v. State, 120 So. 3d 540, 551 (Fla. 2013).

To obtain relief based upon improper prosecutorial comments, the comments must,

> either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (quoting Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994)).

The victim testified in detail regarding the offenses Defendant was convicted of committing, and [redacted], Terri Brooks, Lisa Perez, and Analissa Harden provided testimony that supported the victim's account of the events that occurred. Additionally, [redacted] and [redacted] provided Williams rule testimony regarding prior actions by Defendant against [redacted]. In light of the testimony at trial establishing Defendant's guilt, as well as the Williams rule testimony, the Court finds even if the State's comments regarding Defendant's guilt were improper, Defendant cannot demonstrate he was prejudiced by these two comments. See Walls, 926 So. 2d at 1167. Further, the Court finds the State's comments were brief and did not rise to the level of fundamental error. See Simpson v. State, 3 So. 3d 1135, 1147 (Fla. 2009).

Defendant next highlights the prosecutor's comment that there were not inconsistencies in the victim's testimony. "[A]n attorney is allowed to argue . . . credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." Whigham v. State, 97 So. 3d 274, 275 (Fla. 1st DCA 2012). At trial, the Defense focused on

attacking the victim's credibility, arguing she had motivation to fabricate the allegations. In reply, the prosecutor argued in support of the victim's credibility. The prosecutor's statement regarding the lack of inconsistencies in the victim's testimony was based on the evidence and did not constitute improper bolstering. Whigham, 97 So. 3d at 275-76 (finding the prosecutor did not improperly vouch for the credibility of the witness, but rather, "appropriately explained [the witness's] demeanor on the stand after Appellant's counsel in closing argument attacked her credibility based on her demeanor and purported evasiveness on cross-examination"); see also Jackson v. State, 89 So. 3d 1011, 1018-19 (Fla. 4th DCA 2012) (holding the prosecutor's statements that the witness testified openly, honestly, and truthfully, were not improper where the witness's credibility was "hotly disputed" and "the prosecutor and defense counsel offered detailed arguments supporting or challenging [the witness's] credibility"); Wade v. State, 41 So. 3d 857, 869 (Fla. 2010) (holding statements made by the prosecutor to explain how all of the evidence presented at trial, including testimony from law enforcement officers, corroborated a state witness's testimony, were a fair reply to the defense's argument that the witness was not credible (declined to follow on other grounds McCloud v. State, 208 So. 3d 668 (Fla. 2016))).

. . . .

The last statement Defendant challenges is, " . . . and they are all of a child on this defendant's phone. The victim was a child and this defendant had nude photographs of her saved on his phone." Defendant contends the State made this argument knowing the victim was 18 years or older in the photos, and also the State had agreed that the pictures on the cell phone were not going to be presented as evidence.

In his Original Motion, Defendant acknowledges Defense Counsel objected to the prosecutor's

characterization of the photos being of a "child," but asserts Defense Counsel made an improper objection. Defendant does not state, however, what objection Defense Counsel should have made. Regardless, after Defense Counsel's objection to the State's characterization of the photos being of a "child," and after the trial judge indicated she did not have an "independent recollection whether or not there was testimony in the record that photos were from 18 forward," the state withdrew the comment and rephrased it.

Further, the Court finds Defense Counsel was not deficient for failing to object on the basis the cell phone photos were not entered into evidence. The prosecutor's comment was supported by the victim's and Detective Perez's testimony regarding the photos, and, whether the photos themselves were entered into evidence is of no moment. Further, the characterization of the photos being of a "child" was in fact supported by the victim's testimony that she got a cell phone when she was [redacted] old and sent photos to Defendant when she was [redacted]. Based on the foregoing, the Court finds Defense Counsel did not act deficiently with regard to the prosecutor's statement about the photographs.

Ex. C1 at 494-99 (internal record citations omitted). Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed a pro se initial brief, Ex. C2, the state filed a response, Ex. C3, and Petitioner filed a reply, Ex. C4. The First DCA per curiam affirmed the denial without issuing a written opinion. Ex. C5.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. "The statements of a prosecutor will justify reversal of a conviction if they undermined the

fairness of the trial and contributed to a miscarriage of justice. Furthermore, a prosecutor's statements during closing argument require reversal only if the comments are both improper and prejudicial to a substantial right of the defendant." United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992) (internal quotations and citations omitted). Here, the jury was repeatedly instructed that what the lawyers say is not evidence and they are required to base their verdicts solely on the evidence presented during the trial. See Exs. B3 at 314; B4 at 562, 620-24. While the prosecutor's statement that Defendant is "no longer. . . sitting there an innocent man" is likely improper, considering the record, the prosecutor's comments did not undermine the fairness of the trial or contribute to a miscarriage of justice; thus, counsel was not ineffective for failing to object.[8]

Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Three is denied.

---

[8] As noted by the postconviction court, defense counsel did object to the prosecutor's comment that Petitioner "had nude photographs" of a child saved on his phone, and the prosecutor withdrew and rephrased the comment. Ex. B4 at 584-85.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of January, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

---

[9] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

JAX-3 1/21
c:
Keith Brown, #J02167
Counsel of Record